UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                     :
                                                     :
IN RE WORLD TRADE CENTER LOWER            :
MANHATTAN DISASTER SITE LITIGATION        :
                                                     :
                                                     :
                                                     :
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/30/2019

**OPINION AND ORDER
DISMISSING CASES**

21 MC 102 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

      This motion arises out of claims by plaintiffs alleging injuries caused by harmful

environmental dust exposure at a site owned by Battery Park City Authority ("BPCA") following

September 11, 2001. Approximately 11,000 cases relating to clean-up work at the World Trade

Center ("WTC") were settled. One hundred thirty-eight[1] cases remained against BPCA,

following remand by the U.S. Court of Appeals for the Second Circuit.

      BPCA and intervenor the WTC Captive Insurance Company, Inc. ("WTC

Captive") (collectively, "defendants") move to dismiss remaining plaintiffs' complaints for lack

of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). They argue that the plaintiffs

are covered by settlement agreements with the City of New York (the "City") and the WTC

Captive by entering into the 2010 Final Settlement Agreement ("FSA") or entering into a similar

individual agreement, rendering the current dispute moot, because plaintiffs agreed to reduce any

judgments won against other defendants to the extent of any indemnity claims by the other

---

[1] At the hearing held on July 25, 2019, I dismissed the claims of eight plaintiffs across five cases,
because they alleged exposure only at sites not owned by the BPCA or had already voluntarily
discontinued their suits against BPCA.

defendants against those insured by the WTC Captive. BPCA argues that since the City has a

valid indemnification obligation to BPCA, any plaintiff's recovery against BPCA must be

reduced 100 percent, leaving zero recovery for the plaintiff. Hence, plaintiffs stand to recover

nothing from the current action and, therefore, have not brought a real case or controversy.

Defendants also have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss for

failure to state a claim on which relief may be granted. In short, defendants contend that

plaintiffs' claims are implausible in light of BPCA's demonstrated lack of control over the site

and the absence of activity that constitutes "construction." In light of various factual

submissions presented by the parties, I construe this motion as one for summary judgment.

For the reasons that follow, defendants' motion is granted, and plaintiffs' claims

are dismissed.

## Background

### A. Factual History

#### 1. The Parties

These proceedings arise out of claims by clean up and recovery plaintiffs

("plaintiffs") against Battery Park City Authority ("BPCA") based on alleged toxic exposure at

Stuyvesant High School, located at 345 Chambers Street, New York, New York following

September 11, 2001. I previously described the parties and plaintiffs' claims in greater detail.

*See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 466, 468

(S.D.N.Y. 2014).

Battery Park City Authority is a public corporation created by the New York

Legislature in 1968. *See* N.Y. Pub. Auth. Law § 1971. It owns the land beneath Stuyvesant

2

High School. In 1987, BPCA leased the land to the City. Flannery Decl., Ex. A, No. 21-mc-102, ECF 8108-1. The WTC Captive is the City's third-party liability insurer, and a party to the collective settlement with plaintiffs.

Plaintiffs assert claims arising under New York Labor Law sections 200 and 241(6), as well as common law negligence. Plaintiffs allege, generally, that BPCA and its agents controlled, directed, supervised, and managed cleanup work at Stuyvesant and failed to maintain the site in a safe condition, including taking steps to mitigate the effects of toxic smoke and dust. *See, e.g.*, Carlos Ali Complaint, No. 06-cv-11910, ECF 77, at ¶¶ 143–68. I have described the nature of the alleged toxic exposure elsewhere in more detail. *See, e.g.*, *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d 520, 526–27 (S.D.N.Y. 2006).

## 2. The Lease, Indemnification Responsibilities, and Settlements

The City's obligation to indemnify BPCA arose in 1987, predating both the events giving rise to the indemnification claim and the subsequent settlement agreement. Under the terms of the 1987 lease between the City and BPCA, the Board of Education of the City of New York has the obligation to indemnify BPCA for claims arising out of "any work or thing done in or on the Premises." Article 18 of the Stuyvesant lease agreement provides in part that:

> Tenant [Board of Education of the City of New York], to the fullest extent permitted by law, shall indemnify and save Landlord [BPCA], and the State of New York and their agents, directors, officers and employees (collectively, the "Indemnitees") harmless from and against any and all liabilities, suits, obligations, fines, damages, penalties, claims, costs, charges and expenses, including, without limitation, engineers', architects' and attorneys' fees and disbursements, which may be imposed upon or incurred by or asserted against any of the Indemnitees by reason of (i) any act or omission of any student while such student is on the Premises, or (ii) any act or omission of any invitee, licensee, or any employee, agent or contractor of Tenant, upon the Premises, or (iii) Tenant knowingly permitting any act or omission of any invitee, licensee, or any employee, agent, contractor or student elsewhere in the Project Area, or by reason of any of the following occurring during the

3

> Term, except to the extent that the same shall have been caused in whole
> or in part by the negligence or wrongful act of any of the Indemnitees.

Flannery Decl., Ex. A, ECF 8108-2, at 30–31. Article 7.03 of the lease requires that the City obtain BPCA's approval for certain restoration work. Flannery Decl., Ex. A, ECF 8108-1, at 15–16. Article 19 of the lease provides BPCA a right to enter and inspect the premises. Flannery Decl., Ex. A, ECF 8108-2, at 33.

In 2007, pursuant to the terms of the lease, ḂPCA demanded indemnification from the City for plaintiffs' claims. Flannery Decl., No. 21-mc-102, ECF 8108, ¶ 6; *see also* July 25, 2019 Hearing Transcript ("Tr.") at 51:20–24. The City of New York acknowledged its indemnification obligations to BPCA in connection with the Stuyvesant Plaintiff claims. Biester Decl., Ex. F, ECF 7835. In a letter to the BPCA from Muriel Goode-Trufant and David R. Biester, representing the New York City Law Department and the WTC Captive Insurance Company respectively, the City and the WTC Captive acknowledge that the BPCA has tendered "certain complaints for defense and indemnification." *Id.* The letter states that, upon investigation, the City and WTC Captive "hereby acknowledge the City's duty to pay BPCA's reasonable defense costs and indemnify BPCA against the lawsuits brought by plaintiffs" who are identified in the attached appendix. *Id.* The letter states that "this acknowledgment is subject to the reservation of the City's rights under Article 18 of the Lease, and the WTC Captive's rights under its Liability Insurance Policy #0001." *Id.*

Settlements are also subject to the consent of the WTC Captive and must be made in accordance with Section II.E of the FSA. Biester Decl., Ex. F, ECF 7835. Similarly, the WTC Captive has also acknowledged its duty to indemnify the City pursuant to its insurance policy. *Id.* ¶ 3.

4

Plaintiffs, the City, and the WTC Captive are parties to the 2010 Final Settlement

Agreement ("FSA"), which I approved on June 23, 2010. Order Approving Modified and

Improved Agreement of Settlement at 1–4, No. 21-mc-102, ECF 3804.[2] BPCA was and is not a

party to the FSA.

Section II.E of the FSA contains in its entirety the following language and

provides for the reduction of judgments against indemnitees:

> The Settlement Amount, the Contingent Payment(s), if any, the payment
> due under Section VI.E of this Agreement, if any, and the WTC
> Captive's contribution toward Allocation Costs pursuant to Section XI.D
> of this Agreement will be paid by the WTC Captive on behalf of the
> Insureds only. Accordingly, nothing in this Agreement shall terminate
> Plaintiffs' rights, if any, against Other Defendants.
>
> The Final Settlement Agreement shall be subject to N.Y. GOL § 15-108.
> In addition, to the extent that Plaintiffs who opt in to the Final Settlement
> Agreement or any of them are awarded judgment(s) against the Other
> Defendants or any of them with respect to Debris Removal Claims, such
> Plaintiffs agree to reduce those judgment(s) to the full extent of any and
> all such Other Defendants' contribution and indemnity claims, if any,
> against the Insureds or any of them. In addition, such Plaintiffs and each
> of them agree that after the Effective Date they shall not settle any
> Debris Removal Claims with Other Defendant(s) without securing from
> all settling Other Defendants' their written agreement to release all actual
> or alleged indemnification claims, if any, that they have against the
> Insureds or any of them arising out of or relating to such Other
> Defendant's or Other Defendants' settlement with such Plaintiff(s).

FSA, No. 21-mc-100, ECF No. 2844, § II.E. For the purposes of the agreement and these cases,

it is undisputed that the City is an "Insured" and BPCA is an "Other Defendant."

In order to achieve finality and quell any follow-on litigation, WTC Captive

previously obtained mutual releases of indemnification and contribution claims from a number of

---

[2] The history of the FSA has been recounted elsewhere. Alvin K. Hellerstein, James A.
Henderson Jr., and Aaron D. Twerski, *Managerial Judging: The 9/11 Responders' Tort
Litigation*, 98 Cornell L. Rev. 127 (2012).

defendants on the 21-mc-102 docket, but not BPCA. No. 21-mc-102, ECF 6064, at 12; *see also* Tr. at 16:16–19, 25:5–7.

All of the present plaintiffs, among a group of plaintiffs that at one time numbered around 11,000, had settled previously with the WTC Captive and its insureds, including the City of New York. Every remaining plaintiff alleging exposure at Stuyvesant either participated in the FSA or entered into separate settlement agreements having substantially similar language and effect. Biester Decl. ¶ 5, Ex. G, ECF 7835.

Plaintiffs have already received payment for their claims against the City and the WTC Captive, though they allege in their complaints that the payments they did receive were discounted in expectation of an additional recovery from BPCA. *See, e.g.*, Carlos Ali Complaint, No. 06-cv-11910, ECF 77, at ¶¶ 81–84, 96.

At the time that I approved the FSA, BPCA was not the only remaining non-settling defendant. Various plaintiffs had asserted toxic cleanup claims against Fresh Kills Landfill, Weeks Marine, Inc., and the Port Authority, against whom they later reached settlements and additional recoveries over and above their earlier settlements with the City and the WTC Captive. *See In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 542; *In re World Trade Ctr. Disaster Site Litig.*, Nos. 21-mc-100(AKH), 21-mc-103, 2010 WL 4683610, at *1-2 (S.D.N.Y. Nov. 15, 2010); Tr. at 22:11–24:14; *see also* Alvin K. Hellerstein, James A. Henderson Jr., and Aaron D. Twerski, *Managerial Judging: The 9/11 Responders' Tort Litigation*, 98 Cornell L. Rev. 127, 133 n.38 (2012).

Plaintiffs were not subject to the Section II.E judgment reduction provision with respect to these other subsequent recoveries. Fresh Kills Landfill, Weeks Marine, Inc., and the Port Authority had no indemnification claims or rights against the City. As a result, those

6

plaintiffs who had sued these defendants could keep their recoveries, adding them to the amounts they recovered under the FSA with the City and its Captive Insurer. Tr. at 25:12–26:5.

> 3. BPCA's Supervisory Responsibility and Construction Activity at Stuyvesant

Despite allegations by plaintiffs that BPCA had supervisory authority over the cleanup efforts at the Stuyvesant site, *see, e.g.*, Carlos Ali Complaint, No. 06-cv-11910, ECF 77, at ¶¶ 143–68, the record shows that, following the terrorist attacks of September 11, 2001, BPCA did not have any role in the cleanup activities at Stuyvesant. Following the end of the emergency period, the City controlled Stuyvesant and all debris removal taking place there through the Board of Education ("DOE") and Department of Design and Construction.

At a deposition conducted by plaintiffs' counsel, Robert Serpico, a senior vice president of finance and treasurer for BPCA, testified that BPCA was not involved in the clean up work performed at Stuyvesant. Flannery Decl, ECF 8108-3, at 46:13–12, 73:13–74:20. Serpico testified that the site was not under the BPCA's direction or control. Similarly, Bernard Orlan, the Director of the Office of Environment, Health & Safety for New York City's Board of Education, stated in a declaration that, following September 11, 2001, Stuyvesant was used by New York City Office of Emergency Management and the Port Authority as a staging area and for operations centers. Orlan Decl., ECF 8108-4, ¶¶ 3–4. Following this occupation of Stuyvesant, DOE managed the environmental cleanup of the site, and the work was performed by the New York City School Construction Authority ("SCA"). Orlan Decl., ECF 8108-4, ¶ 4. Contractors hired and managed by the DOE and SCA were responsible for supplying safety equipment and implementing training and protocols for its use. Orlan Decl., ECF 8108-4, ¶ 10. Orlan stated that BPCA was not a party to the contracts between DOE, SCA, and their

7

contractors. Orlan Decl., ECF 8108-4, ¶ 12. BPCA personnel were not present at the site and did not direct the DOE and SCA's cleanup work. Orlan Decl., ECF 8108-4, ¶ 13. Plaintiffs' counsel concedes that at Stuyvesant High School, "only the City of New York cleaned up that high school building." Tr. at 35:5–6.

A September 14, 2001 Structural Integrity Report on Stuyvesant High School specifically found that damage was limited to plaster cracks that had appeared prior to September 11, 2001, and that there was "no noticeable structural cracks and distress . . . on the school buildings' foundation walls, façade, floors, mainframes, roof bulkheads, parapets, [or] chimneys." ECF 8210-1. The engineers inspecting the school recommended the reoccupation of the building for classes. *Id.*

In addition to cleaning and debris clearing activities, some plaintiffs have alleged other activities at Stuyvesant High School, including "moving beams at the site, [and] cutting beams at the site." *See, e.g.*, Ruban Acosta Complaint, 10-cv-6926, ECF 30, ¶ 18. In a supplementary declaration, Ruban Acosta stated that he tested air quality at Stuyvesant and "was required to take air samples by setting up numerous air pumps throughout the building, testing the air, and transporting the collected filters from the air pumps . . . for testing. Acosta Decl., 21-mc-102, ECF 8209-2, ¶ 4.

Similarly, another plaintiff, Vladimir Akoulov ("Akoulov"), makes the same allegation that he "was involved in the construction, excavation and demolition work at the site, to wit: including among other activities, removing W.T.C. debris from the site, moving beams at the site, cutting beams at the site, operating equipment at the site in conjunction with such work and whatever other work was so necessary and/or dictated by the circumstances then and there present." Vladimir Akoulov Complaint, 10-cv-6860, ECF 52, ¶ 18. In his supplementary

8

declaration, Akoulov stated that he was required to knock down walls as needed, decontaminate ceiling light fixtures, decontaminate wiring, remove and discard the ceiling tiles, and decontaminate the drop-down ceiling area. Akoulov Decl., 21-mc-102, ECF 8209-2, ¶ 4.

Boguslaw Zalewski's ("Zalewski") complaint repeats the same general allegations of construction, demolition, and demolition work at Stuyvesant. Boguslaw Zalewski Complaint, 06-cv-1525, ECF 118, ¶ 18. Zalewski stated in his supplementary declaration that, among other work, he "remove[d] masonry walls from various classrooms." Zalewski Decl., 21-mc-102, ECF 8209-2, ¶ 4.

## B. Prior Litigation Proceedings Involving BPCA

BPCA originally opposed the suits on the basis that plaintiffs failed to serve timely notices of their claim on BPCA and other entities named as defendants. *See* N.Y. Gen. Mun. Law § 50-e(1)(a) ("In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, . . . the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises . . . ."). In 2009, I dismissed plaintiffs' claims for failure to serve notices of claim within the statutorily required time. Subsequently, the New York Legislature enacted legislation commonly known as Jimmy Nolan's law, which revived time-barred claims against BPCA and provided for an additional year in which to file notices of suit following its enaction. N.Y. Gen. Mun. Law § 50-i(4)(a).

I granted summary judgment for BPCA, holding that BPCA had capacity to challenge the constitutionality of Jimmy Nolan's law and that the legislation was unconstitutional under the Due Process Clause of the New York State Constitution. N.Y. Const.

9

art. I, § 6; *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 466, 476 (S.D.N.Y. 2014). BPCA had also moved for summary judgment at that time based on the merits of plaintiffs' claims, but I did not reach the merits. *See Chojnowski v. 110 Church Street*, No. 07-cv-1588 (June 16, 2014), ECF 157–60, 203–05, 215–17.

        The Second Circuit certified two questions to the New York Court of Appeals on the issues of BPCA's capacity to challenge Jimmy Nolan's law and the appropriate standard governing its due process challenge. *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d 58, 70 (2d Cir. 2017). After the Court of Appeals accepted the questions, *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 28 N.Y.3d 1159, 1160, 71 N.E.3d 581 (2017), and answered them, *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377, 381, 89 N.E.3d 1227, 1230 (2017), the Second Circuit held that BPCA lacked capacity to sue, because, as a state entity, it could "challenge the constitutionality of Jimmy Nolan's Law only if it qualifie[d] for one of the 'narrow' exceptions to the capacity-to-sue rule." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 892 F.3d 108, 111 (2d Cir. 2018). Finding that BPCA did not qualify for the proprietary interest exception, it vacated the judgment and remanded. *Id.* at 112.

        Following remand, I granted the WTC Captive's motion to intervene. BPCA moved to dismiss the complaints on the basis of subject matter jurisdiction, arguing that the settlements' judgment reduction provision rendered the cases moot. Because plaintiffs' complaints were in a short-form check-off procedure, which made it impossible to understand the facts and circumstances of their claims, generally and against particular defendants, I denied BPCA's motion as premature and ordered plaintiffs to plead "with plausible specificity . . . the viability of [plaintiffs'] claims for damages notwithstanding the judgment reduction provision of

10

prior settlement agreements." Plaintiffs subsequently filed individual complaints, but these complaints are largely uniform and repeat essentially the same allegations previously made. *See, e.g.*, Carlos Ali Amended Complaint ¶¶ 73–119, No. 06-cv-11910, ECF 77; Ruben Acosta Amended Complaint ¶¶ 29–110, No. 06-cv-5335, ECF 159.

Following oral argument on July 25, 2019, I proposed to treat defendants' Fed. R. Civ. P. 12(b)(6) motion as one for summary judgment, pursuant to Fed. R. Civ. P. 12(d), and provided the parties further opportunity to present any additional factual materials bearing on BPCA's control of the Stuyvesant site.

## Discussion

### A.   Motion to Dismiss for Lack of Jurisdiction

Defendants argue that the Court lacks subject matter jurisdiction because of mootness, since plaintiffs are not able to gain any recovery regardless of the merits. Plaintiffs agreed under the FSA to reduce any recovery against an indemnified party, such as BPCA, to the full amount of their indemnity claim against the City, that is, to zero. Plaintiffs claims against BPCA, therefore, are moot, and the court lacks subject matter jurisdiction.

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Id.*

"The existence of a real case or controversy is an irreducible minimum of the jurisdiction of the federal courts." *United States v. City of New York,* 972 F.2d 464, 469 (2d Cir.

11

1992). "A case or controversy becomes moot either when the injury is healed and only prospective relief has been sought, or when it becomes impossible for the courts to redress the injury through the exercise of their remedial powers." *Fund for Animals v. Babbitt*, 89 F.3d 128, 133 (2d Cir. 1996). "[F]ederal courts have no jurisdiction over the litigation, when 'the parties lack a legally cognizable interest in the outcome.'" *Fox v. Bd. of Trustees of State Univ. of New York*, 42 F.3d 135, 140 (2d Cir. 1994) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

"[W]hen a party has already been made whole for damage it claims to have suffered, the case is ordinarily moot." *Arizona Elec. Power Co-op., Inc. v. Fed. Energy Regulatory Comm'n*, 631 F.2d 802, 808 (D.C. Cir. 1980). A settlement has the potential to moot subsequent claims. *See Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 399 (2d Cir. 1997) (finding appeal of sanctions award moot in light of settlement).

### 1. The FSA and Acknowledgment of Indemnification Moot Plaintiffs' Cases

#### a. *The Legality of the Judgment Reduction Provision*

The judgment reduction provision is permitted as a matter of public policy, and no legal principle otherwise bars its application here. The Second Circuit has recognized that judgment reduction provisions are valid and enforceable, even where the amounts and method of judgment reduction are indeterminate at the time of settlement. *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991).

It is sufficient that the City and WTC Captive acknowledge their indemnification responsibility to BPCA. Settlement agreements containing judgment reduction provisions contemplate future and contingent obligations, and are of use to the parties in providing closure

12

during a state of indeterminacy among non-settling parties. *See In re Ivan F. Boesky Sec. Litig.*, 948 F.2d at 1358, 1368–69 ("One purpose of the judgment-reduction provisions is to allow the settling defendants to buy peace from these plaintiffs. Another is to ensure that the settling defendants do not remain derivatively exposed to claims by these plaintiffs in the form of claims for indemnity or contribution by the nonsettling defendants against whom the plaintiffs may obtain judgments."); *see also In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1028 (2d Cir. 1992).

### *b. The Fairness of the Provision in the Settlement Agreement*

The FSA's Section II.E judgment reduction provision has the effect of reducing any judgment plaintiffs stand to gain in this action from the BPCA to the extent of BPCA's indemnification claims against the City and the WTC captive. The meaning of Section II.E is clear on its face, and is consistent with the purposes of the City and the WTC Captive to avoid derivative liability from non-settling defendants and potential double recovery by plaintiffs. *See In re Ivan F. Boesky Sec. Litig.*, 948 F.2d at 1369 (affirming district court's finding of a settlement containing a judgment-reduction provision fair and reasonable). The Court previously approved the settlement, including this provision, and found it "fair, reasonable, adequate, just, and in the best interests of the parties." Order Approving Modified and Improved Agreement of Settlement. No. 21-mc-102, ECF 3804.

Because BPCA has made a claim for indemnification, and the City has acknowledged it, plaintiffs, by their own earlier settlement agreement have no potential for additional recovery in the present action. Put another way, plaintiffs have already received compensation in full satisfaction of their claims against the City, the WTC, and its indemnitees.

13

Plaintiffs stand to gain nothing further from further proceedings, even if successful, against BPCA.

> c. *The Terms of Article 18 and Section II.E Moot the Litigation*
>
> > i. *Plaintiffs' acceptance of Section II.E is sufficient to terminate their claims.*

The operative words in the second paragraph of Section II.E are that "Plaintiffs agree to reduce [any judgment] to the full extent of any and all such Other Defendants' contribution and indemnity *claims*, if any, against the Insureds or any of them." FSA § II.E (emphasis added). BPCA's having asserted its right to indemnification pursuant to the preexisting 1987 lease is in itself sufficient to deny plaintiffs' any further recovery, even if plaintiffs would be successful against BPCA. Contrary to plaintiffs' arguments, *see* Tr. at 32:22–25, the application of the provision to BPCA turns on the existence of a claim, and not a judgment, settlement, or other final disposition. Plaintiffs have given up their rights to a double recovery.

Contrary to plaintiffs' arguments, the specific reference to New York General Obligation Law § 15-108 does not limit the judgment reduction provision to the law's scope, because Section II.E contains other language that extends its application beyond the terms of the statute. Subsection (a) of the statute provides that:

> When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's

14

> equitable share of the damages under article fourteen of the civil practice
> law and rules, whichever is the greatest.

N.Y. Gen. Oblig. Law § 15-108(a). As a result, the statute is consistent with a settlement agreement that reduces plaintiffs' remaining claims against other defendants "to the extent of any amount stipulated by the release or the covenant." *Id.* In this case, Section II.E of the FSA reduces plaintiffs' claims to the extent of any claim of indemnification by BPCA against the City, one of the parties to the agreement. The statute and the FSA are not inconsistent with the total reduction of plaintiffs' claims against the BPCA.

## ii. *The Negligence Exception in the Indemnity Agreement Does Not Change the Result*

Plaintiffs point to an exception to indemnity in the 1987 agreement between BPCA and the City. The lease for Stuyvesant High School provides for indemnification for liability arising from various activities "except to the extent that the same shall have been caused in whole or in part by the negligence or wrongful act of any of the Indemnitees." In its letter acknowledging its indemnification responsibility, the City included the caveat that "this acknowledgment is subject to the reservation of the City's rights under Article 18 of the Lease." Biester Decl., Ex. F, ECF 7835. Plaintiffs also suggest that the BPCA may have had the right to reenter, with attendant obligations to correct defects. Opp., ECF 8058, at 21.

A factual inquiry into the alleged negligence of BPCA is unnecessary for me to hold, as a matter of law, that the exception does not invalidate BPCA's indemnity claim or the application of Section II.E, for at least two reasons.

First, it is a claim for indemnification that is sufficient to trigger the judgment reduction provision; the claim does not have to be successful, and such a claim for

15

indemnification has been made, by BPCA against the City and the Captive Insurer, and acknowledged by the City and BPCA.

Second, as a matter of contract law, the City cannot take advantage of the exception when the claim against BPCA is predicated on BPCA's failure to supervise the City's clean-up activities, that is, failure to recognize and correct the City's negligence. The indemnification exception, when the harm "shall have been caused in whole or in part by the negligence or wrongful act of any of the Indemnitees," requires some independent act of negligence by BPCA. The City cannot invoke an exception to indemnification when the City itself is the negligent party, and the alleged negligence on the part of the indemnitee is failure to supervise and regulate the City's negligence.

2. Plaintiffs' Remaining Arguments in Favor of Continuing the Litigation Are Without Merit

*a.* *The Fact that Plaintiffs Have Not Settled with the BCPA and that the BPCA Did Not Participate in the FSA Is Irrelevant*

Plaintiffs draw attention to the fact that the BPCA was not a party to the 2010 FSA and did not settle its claims with plaintiffs. As discussed, the BPCA is an indemnitee of the City, which was a party to the FSA. The BPCA is a third party beneficiary of this agreement. This relationship is independent of BCPA's litigation posture in the years following the 2010 FSA, which has been to contest its liability. As a result, plaintiffs' arguments on this issue are not persuasive.

16

### b. The BPCA's Prior Statements Do Not Preclude Its Current Position

Plaintiffs further argue that, because BPCA took the position that it would be responsible for paying a judgment during its challenge of the Jimmy Nolan law before the Second Circuit, its current position is inconsistent and not permissible. This argument predates the letter from the City and the WTC Captive formally acknowledging the indemnification agreement. BPCA's argument before the Second Circuit is not relevant.

Similarly, plaintiffs make much of BPCA's purported silence and acquiesce to a statement by the Court at an August 3, 2010 "town hall" meeting held to explain the settlement to claimants and interested parties. ECF 8119-9, at 38, 70. The comments by the Court described ongoing negotiations related to three other categories of defendants, including the Port Authority, Fresh Kills entities, and insurers for claims related to barges. ECF 8119-9, at 70. The Court did not name BPCA, which, as discussed, was differentiated from the aforementioned defendants because it had an indemnification claim against the City.

### c. The Timing of the Motion Does Not Preclude a Finding for the BPCA

Somewhat inconsistently, Plaintiffs argue that BPCA's motion is both too delayed and too premature to grant relief. Neither of these positions has merit. BPCA's mootness argument is not precluded by its delay in raising it. The issue of subject matter jurisdiction can be raised at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction, *see* Fed. Rule Civ. Proc. 12(b)(1), may be raised

17

by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.").

Similarly, granting relief at this juncture is not premature. Plaintiffs attempt to distinguish the Court's approval of Section II.E in the context of proceedings with NYU by observing that the Court has never considered the meaning of Section II.E as applied to the BPCA. This distinction is true, but ultimately immaterial. In any case, the agreement can be interpreted as a matter of law and does not require additional fact discovery.

### d. The Record and FSA Do Not Support Plaintiffs' Argument that the Settlements Were Discounted

The contract and record are not consistent with plaintiffs' arguments that the earlier FSA settlement was unfairly discounted in expectation of further claims against the BPCA or other non-settling parties. The concept of a "discount" was never previously discussed. Plaintiffs settled according to set formulae. Some plaintiffs, who also sued the Port Authority, and other defendants, added to their settlements. Plaintiffs who sued BPCA seek to add still further to their settlement but, as I hold, cannot do so.

The Court relies on the language of the agreement; the subjective expectations of the parties are not relevant. Plaintiffs cite Section XIII.B.viii of the FSA in support of their claim that plaintiffs' claims were discounted by the presence of non-settling defendants.

> For Primary Plaintiffs in the Allocation Pool for Master Docket No. 21 MC 102, the Allocation Neutral shall credit only the percentage of time that he or she performed the work or volunteer service which is the basis for his or her Debris Removal Claims against the Insureds or any of them, as opposed to the time spent working at other locations which forms the basis for his or her Debris Removal Claims against Other Defendants, for the period from September 11, 2001, to the present, as explained in Section XIII.C.iv of this Agreement.

18

FSA., No. 21-mc-100, ECF No. 2844 § XIII.B.viii. This language is consistent with precisely the opposite conclusion, that is, that plaintiffs' claims were in no way discounted by presence of *intrabuilding* non-settling defendants. That is, while claims might have been discounted by time spent in a different building serving as the basis for liability against another defendant, there was no reduction based on the presence of unsettled claims against more than one defendant in any single given building, here, the BPCA at Stuyvesant High School. Similarly, the general reservation of further rights in the FSA Section II.E in no way operates to terminate the specific effect of the judgment reduction provision in the same section.

The observed lower value of settlements to these plaintiffs was because of less time spent at sites subject to the settlement, and not because of any reservation of funds because of additional unsettling defendants at a single site. Denying the motion under these facts and circumstances would be tantamount to granting plaintiffs a double recovery in this case.

Accordingly, I hold that plaintiffs' claims against BPCA are moot, since plaintiffs stand to make no further recovery under Section II.E's judgment reduction provision, and the case is dismissed.

**B.  Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted and Summary Judgment**

There is an alternative basis for dismissing certain of plaintiffs' claims. Defendants argue that the complaints insufficiently plead claims under New York Labor Law § 200, New York Labor Law § 241(6) and common law negligence, because BPCA, as an absent landlord who relinquished control of the site to the City, lacks sufficient meaningful "supervisory

19

control" to satisfy a claim under section 200, and because the work allegedly performed does not fall under the type protected by section 241(6).

### 1. Legal Standards

In ruling on a motion to dismiss for failure to state a claim, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *as amended* (Apr. 20, 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Fed R. Civ. P. 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." In their submissions addressing the Rule 12(b)(6) issue and at oral argument, the parties have attached and discussed extrinsic factual matter and discovery taken earlier in the case. "[A] district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings, but the rule requires that the court give 'sufficient notice to an opposing party and an opportunity for that party to respond.'" *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Groden v. Random House, Inc.,* 61 F.3d

20

1045, 1052 (2d Cir. 1995)). The Court provided such notice on July 26, 2019, ECF 8203, and the parties submitted additional factual materials on August 15, 2019.

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, a Court must "view the evidence in the light most favorable to the party opposing summary judgment, . . . draw all reasonable inferences in favor of that party, and . . . eschew credibility assessments." *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 122 (2d Cir. 2004).

### 2.    New York Labor Law Section 200

"The common law duties traditionally owed by landowners, general contractors, and in very limited circumstances, lessees, to maintain and provide a safe workplace are codified in New York Labor Law section 200. N.Y. Lab. Law § 200 (2006)." *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 571 (citing *Ross v. Curtis–Palmer Hydro–Electric Co.,* 81 N.Y.2d 494, 601 N.Y.S.2d 49, 618 N.E.2d 82, 87 (1993)).

> Section 200 provides, in relevant part, as follows:
>
> All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons.

N.Y. Lab. Law § 200(1) (2006).

21

As I previously held, "liability under this provision is dependent on a showing that the person or entity to be charged has exercised supervisory control, whether as an owner, lessee or contractor. Recovery may not be had 'unless it is shown that the party to be charged exercised some supervisory control over the operation.'" *In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 571 (internal citation omitted) (quoting *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 601 N.Y.S.2d 49, 618 N.E.2d at 88).

Notwithstanding the conclusory allegations of the complaints, *see, e.g.*, Carlos Ali Complaint, No. 06-cv-11910, ECF 77, at ¶ 144, BPCA did not exercise "supervisory control," the allegations that it did so are not plausible, and there can be no genuine dispute as to this fact. This conclusion is consistent with my earlier holdings under similar circumstances. *See In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d at 571 ("[L]iability under [N.Y. Lab. Law § 200(1)] is dependent on a showing that the person or entity to be charged has exercised supervisory control, whether as an owner, lessee or contractor.") (granting summary judgment for certain defendants based on lack of control over the recovery effort). As BPCA argues, plaintiffs have already had sufficient prior opportunities for conducting discovery, and thus, their unsubstantiated and conclusory allegations should not be credited at this juncture. *See* Reply, at 11. Prior discovery, in which plaintiffs' counsel participated, has already demonstrated BPCA's lack of supervisory control over, and thus liability for the post-disaster clean up at Stuyvesant.

No further discovery is necessary, and BPCA is entitled to summary judgment on plaintiffs' section 200 claim.

3. New York Labor Law Section 241(6)

Section 241 further codifies the obligations of owners and contractors to ensure

workers' safety. Section 241(6) specifically provides that:

> All contractors and owners and their agents . . . when constructing or
> demolishing buildings or doing any excavating in connection therewith,
> shall comply with the following requirements
> * * *
> 6. All areas in which construction, excavation or demolition work is
> being performed shall be so constructed, shored, equipped, guarded,
> arranged, operated and conducted as to provide reasonable and adequate
> protection and safety to persons employed therein or lawfully
> frequenting such places. The commissioner may make rules to carry into
> effect the provisions of this subdivision, and the owners and contractors
> and their agents for such work . . . shall comply therewith.

N.Y. Lab. Law § 241(6) (2006).

"The duty imposed under section 241(6) may not be delegated. *See Ross,* 601

N.Y.S.2d 49, 618 N.E.2d at 87. Thus, consideration of whether the defendant exercised control

or supervision over the worksite is irrelevant. *In re World Trade Ctr. Disaster Site Litig.*, 456 F.

Supp. 2d at 573.

"Section 241(6) is limited to 'industrial accidents specifically in connection with

construction, demolition or excavation work.'" *In re World Trade Ctr. Lower Manhattan*

*Disaster Site Litig.*, 44 F. Supp. 3d 409, 436 (S.D.N.Y. 2014) (quoting *Nagel v. D & R Realty*

*Corp.*, 99 N.Y.2d 98, 102, 782 N.E.2d 558, 560 (2002)). "The Courts look to the regulations

implementing section 241(6) to determine what constitutes 'construction, excavation or

demolition.'" *Id.* (quoting *Joblon v. Solow,* 91 N.Y.2d 457, 466, 672 N.Y.S.2d 286, 695 N.E.2d

237 (1998)). The New York Industrial Code defines "construction work" as:

> All work of the types performed in the *construction,* erection, *alteration,*
> *repair, maintenance,* painting or moving of buildings or other structures
> . . . by way of illustration but not by way of limitation, the work of
> hoisting, land clearing, earth moving, grading, excavating, trenching,
> pipe and conduit laying, road and bridge construction,

23

> concreting, *cleaning of the exterior surfaces including windows of any building or other structure under construction,* equipment installation and the structural installation of wood, metal, glass, plastic, masonry and other building materials in any form or for any purpose.

N.Y. Comp. Codes R. & Regs. tit. 12, § 23–1.4(b)(13) (2014) (emphasis added).

"[T]he particular task performed by a plaintiff need not constitute 'construction, excavation or demolition' so long as the task is sufficiently connected to a larger project that qualifies as 'construction, demolition, or excavation.'" *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 44 F. Supp. 3d at 437 (citing *McNeill v. LaSalle Partners,* 52 A.D.3d 407, 409, 861 N.Y.S.2d 15 (1st Dep't 2008)). "[I]f the work is unrelated or insufficiently connected to any 'construction, excavation or demolition,' it is not covered under Section 241(6)." *Id.* (citing *English v. City of New York,* 43 A.D.3d 811, 812–13, 844 N.Y.S.2d 320 (2d Dep't 2007)).

Unlike section 200, BPCA's lack of supervisory authority over the site cannot provide a basis for dismissing plaintiffs' section 241(6) claim. Defendants argue that the work conducted at Stuyvesant lacks a sufficient nexus to construction, excavation, and demolition activities covered under the statute. As discussed, an engineering report completed shortly after September 11, 2001 found no significant structural defect in Stuyvesant High School, but this does not in itself preclude the possibility of subsequent construction activity. Though plaintiffs do not allege structural damage to Stuyvesant High School, they do allege, generally and in conclusory form, "construction, debris removal, excavation and demolition" operations at the Stuyvesant High School, and moving and cutting beams. *See, e.g.*, Ali Complaint, No. 06-cv-11910, ECF 77, at ¶ 391. Thus, Plaintiffs argue, section 241(6) is applicable.

Several plaintiffs state also in declarations that they were engaged in construction activity in Stuyvesant, including knocking down and removing walls. Puzzlingly, the allegations of the complaints do not mention removal of walls. Indeed, there is a serious question about the

24

plausibility of plaintiffs' allegations of construction activity, for they are inconsistent with the sworn testimony.

I have ruled that the kind of cleanup and dust remediation work alleged to have occurred at Stuyvesant High School does not constitute "construction." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 44 F. Supp. 3d at 437 ("The work performed to remediate these buildings consisted exclusively of cleaning the dust and removing contaminated debris, tiles and sheetrock. Such work does not constitute a 'significant physical change to the configuration or composition' of the building. Furthermore, the work performed at these buildings does not present the degree of inherent risk against which the New York legislature sought to protect workers by imposing vicarious liability on owners, general contractors, and their agents.") (citations omitted).

Plaintiffs argue that I should not be engaged in fact-finding to decide a motion for summary judgment, particularly since, as I have found, demolishing walls can, in the context of remediating and rehabilitating buildings for occupancy, create a triable issue of fact as to whether plaintiffs' work was connected to construction, excavation or demolition. *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 44 F. Supp. 3d at 438. There, I concluded that the removal of a wall constituted a "significant physical change to the configuration and composition of the building" at least as significant as that in *Joblon v. Solow*, 91 N.Y.2d 457, 672 N.Y.S.2d 286, 695 N.E.2d 237, in which the New York Court of Appeals held that plaintiff's installation of a wall clock by chiseling a hole through a wall constituted activity falling within the scope of section 241(6). *Id.* at 437.

Plaintiffs' arguments lack substance in the context of the undisputed evidence that no construction work was necessary in Stuyvesant High School. But the area did serve as a

25

staging area, and it is not clear if that might be enough to invoke non-delegable duties of care under section 241(6). Were it not for the clear applicability of the judgment-reduction clause in Section II.E of the FSA, summary judgment on this issue might be of greater practical consequence. But with the clause, plaintiffs have no hope of succeeding. Summary judgment is appropriate, and plaintiffs' complaints are dismissed.

## CONCLUSION

For the reasons stated, BPCA's motion to dismiss is granted. The clerk shall terminate the motion (No. 21-mc-102, ECF 8106), enter judgment for defendants, with costs to be taxed by the Clerk, and close the cases at the docket numbers listed in the appendix.

SO ORDERED.

Dated:     August 30, 2019
           New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

Appendix: Plaintiff and Case List

| Plaintiff Last Name | First Name | Docket Number |
|---|---|---|
| ACOSTA | RUBEN | 06cv05335 |
| AKOULOV | VLADIMIR | 10cv06860 |
| ALI | CARLOS | 06cv11910 |
| ALVAREZ | GLORIA | 07cv11017 |
| ALVAREZ | MARIA | 05cv10135 |
| ALVARRACIN | JOSE | 06cv14459 |
| ALVEAR | SANTIAGO | 06cv02220 |
| ANGULO | ROSSINA | 07cv04449 |
| ARRUDA-LOOR | BETSY | 06cv13787 |
| ASMAL | CARLOS | 07cv01462 |
| ASTUDILLO | FREDDY | 07cv01463 |
| ASTUDILLO | WILMER | 07cv01561 |
| AVILA | NOLBERTO | 07cv01564 |
| AVILA | RICHARD | 07cv11018 |
| BARROS | RODRIGO | 08cv02255 |
| BASTIDAS | JULIO | 07cv05276 |
| BERMEO | LUIS | 08cv02568 |
| BOGACKI | JACEK | 08cv02573 |
| BUCKLEY | JOHNATHAN | 06cv01654 |
| BUESTAN | HECTOR | 07cv04456 |
| BUNAY | FLOR | 08cv02577 |
| BUNAY | TERESA | 08cv02578 |
| CAIVINAGUA | BOLIVAR | 07cv01573 |
| CAIVINAGUA | JUAN | 07cv01574 |
| CAIZA | MARTHA | 07cv01475 |
| CALLE | GIL | 07cv01576 |
| CAMPOZANO | RODRIGO | 07cv04459 |
| CAMPUZANO | CONSUELO | 06cv14529 |
| CAMPUZANO | JOAQUIN | 07cv01478 |
| CARR | JAMES | 06cv00647 |
| CASTANO | CARLOS | 08cv02591 |
| CASTILLO | NANCY | 08cv02593 |
| CASTILLO | PIEDAD | 05cv10743 |
| CHALCO | AIDA | 07cv01481 |

| CHIQUE | MANUEL | 08cv02600 |
|--------|--------|-----------|
| CHOJNOWSKI | ANDRZEJ | 07cv01588 |
| CINTRON | YOLANDA | 06cv05631 |
| CORDERO | FREDDY | 08cv04944 |
| CORONEL | JOSE | 07cv01487 |
| COSME | MANUEL | 06cv12006 |
| CRIOLLO | NANCY | 07cv04462 |
| CURLEY | PETER | 06cv07384 |
| DABROWSKI | MIECZYSLAW | 07cv05283 |
| DAVILA | FLORA | 07cv04463 |
| DEJESUS | MARIA | 08cv02605 |
| DIRUBBO | LEO | 06cv07396 |
| DOBROWOLSKI | JAN | 10cv06959 |
| DOTA | CLARA | 07cv01602 |
| DOWD | GLENN | 09cv02813 |
| DROZDZ | STANISLAW | 06cv14620 |
| DUCHITANGA | ANGEL | 07cv01492 |
| DUCHITANGA | MANUEL | 07cv05287 |
| DUCHITANGA | MARIA | 07cv01604 |
| ESPINOZA | ALEX | 08cv02614 |
| FALTYNOWICZ | STANISLAW | 08cv02616 |
| FARES | MANUEL | 08cv02617 |
| FELICIANO | ALDO | 06cv11663 |
| FUENTES | LAZARO | 07cv10151 |
| GALLEGOS | REBECA | 05cv09820 |
| GALLEGOS | WALTER | 07cv04467 |
| GALLI | DIANA | 07cv04503 |
| GIRALDO | EDIR | 08cv02626 |
| GLOWATY | MAREK | 09cv10591 |
| GRABOWSKA | MALGORZATA | 06cv04885 |
| GUIRACOCHA | SAMUEL | 06cv12120 |
| HERNANDEZ | ISAAC | 05cv01379 |
| HERRERA | JOSE | 06cv12139 |
| INGA | LUIS | 07cv04474 |
| KEAR | JOHN | 07cv04366 |
| KEARNEY | JOHN | 07cv10787 |
| KORZEP | ANDRZEJ | 08cv02642 |
| KUCHARSKI | ZBIGNIEW | 08cv09069 |

| LEON | SEGUNDO | 07cv08283 |
|---|---|---|
| LITUMA | MANUEL | 07cv01649 |
| LLUGUAY | MARIA | 08cv02280 |
| LOJA | RAUL | 07cv01652 |
| LOPEZ | WILBER | 06cv14808 |
| MARIN | WALTER | 07cv10070 |
| McKAY | (FERNANDEZ) | SANDRA |
| MERCHAN | CARLOS | 07cv01665 |
| MIRANDA | RICHARD | 05cv10750 |
| MORA | EUGENIO | 06cv13168 |
| MORALES | FABIO | 07cv01667 |
| MORALES | SEGUNDO | 07cv01668 |
| MORDENTE | COMO | 06cv07271 |
| MOROCHO-ANDRADE | SIMON | 08cv02663 |
| MROZEK | JACEK | 07cv08275 |
| NARANJO | ANGEL | 07cv00066 |
| NARANJO | LEONARDO | 08cv02668 |
| NARANJO | LUIS | 05cv10738 |
| NAULA | MIGUEL | 08cv02671 |
| NAULA | SEGUNDO | 08cv02672 |
| ONZO | EMIL | 06cv10624 |
| PARRA | FELIX | 07cv04506 |
| PARRA | LEYDI | 08cv02681 |
| PATERNOSTRO | MICHAEL | 06cv10669 |
| PEREZ | JACQUELINE | 07cv08284 |
| PERKOWSKI | KAZIMIERZ | 06cv08278 |
| PERYZYNSKA | IRENA | 06cv05345 |
| PINEDA | HERNAN | 07cv05376 |
| PUMA | MARIA | 07cv01688 |
| PUMACURI | MANUEL | 09cv03453 |
| QUIZHPI | SEGUNDO | 08cv02246 |
| RETELSKI | MARIAN | 10cv06868 |
| RODRIGUEZ | LUIS | 07cv05313 |
| RODRIGUEZ | WILLIAM | 07cv05424 |
| ROJAS | MARIO | 06cv05786 |
| SAAVEDRA | JORGE | 08cv02705 |
| SALAZAR | MARIA | 07cv01699 |

| SALGADO | LORRAINE | 09cv01544 |
|---|---|---|
| SANCHEZ | EDILBERTO | 07cv05384 |
| SANCHEZ | JOSE | 07cv04513 |
| SANCHEZ | JUAN | 07cv05318 |
| SANCHEZ | WILSON | 07cv05386 |
| SANDOYA | HENRY | 07cv11025 |
| SANTANA | MIQUEL | 07cv01700 |
| SANTOS | FERNANDA | 07cv05319 |
| SARMIENTO | EDWIN | 07cv04515 |
| SIGUENCIA | RAUL | 07cv01533 |
| SUCO | NORMA | 07cv01708 |
| TABARES | MAURICIO | 08cv02721 |
| TACHE | BERTHA | 07cv01537 |
| TIGHE | STEPHEN | 06cv15091 |
| TORRES | AIDA | 08cv02309 |
| VASQUEZ | ROMMEL | 07cv01543 |
| VILLAFUERTE | JULIO | 06cv01652 |
| VILLARROEL | SEGUNDO | 07cv01546 |
| VINTIMILLA | ROSALIA | 08cv02317 |
| VISCAINO | PEDRO | 07cv08291 |
| WOLKOWICZ | JAN | 07cv01728 |
| WSZOLKOWSKI | DARIUSZ | 05cv08499 |
| ZALEWSKI | BOGUSLAW | 06cv01525 |
| ZAMORA | BOLIVAR | 08cv02740 |
| ZENTENO | LAWRENCE | 07cv01731 |
| ZIMMERMAN | IRIS | 06cv11288 |